UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CRYSTAL W.,

Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 3:25-cv-05294-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed a claim for SSI on September 15, 2020, alleging disability beginning April 1, 2017 (later amended to September 15, 2020). AR 17. Her claim was denied initially and upon reconsideration. *Id.* ALJ Sue Leise held a hearing on October 5, 2023, and subsequently found plaintiff not disabled. AR 17-33. The ALJ found that plaintiff's degenerative disc disease, obesity, general anxiety disorder, and post-traumatic stress

1

disorder (PTSD) were severe impairments. AR 19. Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for four hours in an eight-hour workday, and sit six hours in an eight-hour workday. She needs to alternate sitting and standing. She can stand/walk for 30 minutes at a time before sitting for five to ten minutes before returning to the standing position. She can sit for an hour then would need to stand for five to ten minutes before returning to the seated position. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, and scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extremes of heat. She must avoid exposure to industrial vibration, and workplace hazards, such as moving machinery and unprotected heights. She can remember, understand, and carry out simple tasks or instructions. She can have no public interaction. She can work in proximity to co-workers but cannot perform any tasks that require teamwork. She can perform tasks that require only simple work-related decisions with few, if any, workplace changes.

AR 23. The ALJ found plaintiff could perform work existing in the national economy and was accordingly not disabled. AR 32. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

Plaintiff argues that the ALJ erred: by not having substantial evidence or valid reasons for finding medical evidence unpersuasive; in discounting plaintiff's statements about symptoms and limitations; by improperly analyzing her impairments under the Listings at step three; and made erroneous findings at step five. Dkt. 8.

**1. Medical evidence.**

Under the applicable regulations, the ALJ was required to articulate how persuasive she found each medical opinion or prior administrative medical finding and explain how she considered supportability and consistency in her analysis. 20 C.F.R. § 416.920c(b)(2). Supportability means the extent to which a medical source supports their opinion by explaining the relevant medical evidence. *Woods v. Kijakazi,* 32 F.4th 785, 791-92 (9th Cir. 2022). Consistency means the extent to which an opinion is consistent with the evidence from other medical and non-medical sources in the claim. *Id.* at 792. An ALJ cannot reject an opinion as unsupported or inconsistent without providing a reason supported by substantial evidence. *Id.*

**a. Angela Minor, PA-C**

Ms. Minor evaluated plaintiff on April 25, 2021, and diagnosed morbid obesity, possible left sided lumbar radiculopathy, and endometriosis. AR 559-68. Ms. Minor opined that plaintiff could stand/walk for three hours in an eight-hour workday, up to 30 minutes at a time. AR 566. She could sit for four hours in an eight-hour workday, up to

one hour at a time. *Id.* Plaintiff could occasionally lift/carry 15 pounds and frequently lift/carry five pounds. *Id.* She could occasionally push and pull and frequently balance. *Id.* She could squat, kneel, climb, and crawl more than occasionally, but less than frequently. *Id.* The ALJ found Ms. Minor's opinion unpersuasive. AR 29.

### i. Supportability

The ALJ found Ms. Minor's opinion was unsupported by her examination and that she did not explain the opined limitations other than basing them on the diagnosed conditions. AR 29. Plaintiff argues the ALJ ignored relevant statements from Ms. Minor's opinion that support her opined limitations. Dkt. 8 at 4.

An ALJ may consider the quality of an explanation when determining how much weight to give a medical opinion, *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020), and need not accept an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). But the ALJ may not reject a physician's opinion as unsupported while ignoring or unreasonably interpreting the physician's findings. *Garrison,* 759 F.3d at 1012-13.

In finding Ms. Minor's opinion poorly explained and unsupported, the ALJ failed to look past the medical source statement portion of the opinion. Looking at the entirety of the opinion, Ms. Minor reviewed records, obtained a clinical history from plaintiff, and conducted a physical examination. AR 560-65. During the physical examination, Ms. Minor observed mid-lumbar pain on palpation, left-sided tenderness, and pain with reduced lumbar range of motion. AR 564. Supine and seated straight leg raise tests produced shooting pain to the left hip, pain in the left thigh, and numbness in the toes. *Id.* Such findings support the opined limitations. And that Ms. Minor did not include a

narrative explanation for each limitation is not a rational reason to reject the opinion. *Donald O. v. Saul,* 2020 WL 6561610, at *3 (W.D. Wash. Nov. 9, 2020) (finding the ALJ unreasonably characterized an opinion as "unexplained" when the opinion, read as a whole, explained the basis for the opined limitations). Accordingly, the ALJ's supportability findings are not supported by substantial evidence.

### ii.  Consistency

The ALJ also found Ms. Minor's opinion inconsistent with the record, citing plaintiff's presentation at other appointments, "the relatively mild objective findings," and plaintiff's activities of daily living. AR 29. An ALJ may reject a physician's opinion that is inconsistent with the medical record. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). But to reject an opinion on this basis, the ALJ must offer some explanation of the alleged inconsistency. "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988).

Here, the ALJ failed to explain why the cited evidence was inconsistent with Ms. Minor's opinion. And review of this evidence reveals no inconsistency. First, some of the records pertain to mental health or temporary illnesses and are accordingly irrelevant to limitations stemming from plaintiff's spinal impairments. *See, e.g.*, AR 465, 545, 623, 633. The rest of the records document persistent back pain despite treatment with muscle relaxers, gabapentin, physical therapy, and spine injections. *See, e.g.*, AR 576, 614, 637, 667-68, 687, 710. Such findings are consistent with Ms. Minor's opinion and can hardly be classified as "relatively mild." AR 29.

The ALJ also did not explain how plaintiff's activities were inconsistent with Ms. Minor's opinion, and again, no inconsistency is apparent. The ALJ referenced activities such as housework and shopping in stores, but such activities do not require lifting, standing, walking, or sitting in excess of the limits opined by Ms. Minor. Further, Ms. Minor considered such activities in her opinion. *See* AR 561 (noting plaintiff's activities include cleaning the house in segments and shopping once per month with help of a roommate). The ALJ's consistency findings are not supported by substantial evidence.

Having failed to articulate valid supportability or consistency findings, the ALJ erroneously rejected Ms. Minor's opinion. As Ms. Minor opined limitations more restrictive than those included in the RFC, the error was not "inconsequential to the ultimate nondisability determination," and was therefore harmful. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

### b. Dennis Koukol, MD & Tom Dees, MD

State agency medical consultants Dr. Koukol and Dr. Dees reviewed plaintiff's claim at the initial and reconsideration levels, respectively. AR 79-81, 106-09. The ALJ found their opinions somewhat persuasive and incorporated their lifting/carrying, standing/walking, and sitting limitations in the RFC. AR 28-29. She noted that these limitations were consistent with the longitudinal record, including findings of normal strength and no swelling of the extremities. *Id.* However, the ALJ found plaintiff required a sit/stand limitation and more restrictive postural and environmental limitations than those opined by Dr. Koukol and Dr. Dees. AR 29.

The ALJ did not explain how she considered the supportability of these opinions. Dkt. 8 at 6. The regulations require the ALJ to explain how she considered supportability

6

*and* consistency when evaluating the persuasiveness of each opinion. 20 C.F.R. § 416.920c(b)(2). Having failed to explain how she considered one of the most important factors, the ALJ has erred. That said, this error was harmless, as the ALJ did not reject any of the limitations opined by Drs. Koukol & Dees.

Plaintiff contends the ALJ's consistency analysis is not supported by substantial evidence because the ALJ's cherry-picked findings of normal strength and no swelling fail to show that she can sit, walk, lift, or carry at the levels opined by Dr. Koukol and Dr. Dees. Dkt. 8 at 6. While an ALJ must explain why she rejects medical opinion evidence, she need not provide reasons for accepting a medical opinion. *Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1223 (9th Cir. 2010). Accordingly, plaintiff has not established error in the consistency analysis.

Finally, plaintiff argues the ALJ erred by adding a sit/stand limitation to the RFC without citing any evidence to show such a limitation would enable her to work. Dkt. 8 at 7. But it is ultimately plaintiff's burden to prove disability, not the ALJ's. 20 C.F.R. § 416.912(a). And the ALJ is not required to identify affirmative evidence establishing plaintiff's ability to work. *Carbajal v. Kijakazi*, 2022 WL 172276, at *4 (E.D. Cal. Jan. 19, 2022) ("Plaintiff has the burden to prove the existence of disabling limitations; the ALJ does not have the burden to disprove the same.").

Even assuming the ALJ erred, such error would be harmless. *Turner,* 613 F.3d at 1223. The RFC finding is more restrictive than or includes opined limitations from the medical sources, therefore it did not affect the ALJ's decision.

### c. Noah Weatherton, PMHNP

Mr. Weatherton evaluated plaintiff in April 2021 and opined moderate limitations in social interaction and severe limitations in adaptation. AR 553-58. The ALJ found Mr. Weatherton's opinion somewhat persuasive, agreeing that plaintiff had moderate limitations in social interaction, but concluded the totality of the record did not warrant more restrictive limitations. AR 30-31. Plaintiff contends the ALJ either overlooked, ignored, or misinterpreted Mr. Weatherton's opinion generally and on adaptation specifically. Dkt. 8 at 8.[1]

The ALJ's analysis is insufficient. First, the ALJ failed to address the supportability factor as required by the regulations. 20 C.F.R. § 416.920c(b)(2). The ALJ made only a passing reference to consistency, stating Mr. Weatherton's opinion on moderate social interaction limitations was persuasive "because it is generally consistent with the record." AR 30. The ALJ offered no further explanation, nor did she cite any evidence to support this finding. And the ALJ's discussion of adaptation limitations amounts to nothing more than a restatement of the adopted limitations without further analysis. Having failed to articulate valid supportability or consistency findings, the ALJ erroneously rejected Mr. Weatherton's opinion. As Mr. Weatherton opined limitations more restrictive than those included in the RFC, the error was not "inconsequential to the ultimate nondisability determination," and was therefore harmful. *Molina*, 674 F.3d at 1115.

---

[1] Although the ALJ fails to specifically reference Mr. Weatherton's adaptation limitation, she stated that she found the limitations opined by the state agency psychological consultants more persuasive. AR 30. Thus, although explained with "less than ideal clarity," the Court can "reasonably discern" that the ALJ found Mr. Weatherton's adaptation limitation unpersuasive. *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015). Accordingly, the ALJ's failure to specifically reference this limitation was not in itself error, as plaintiff appears to suggest.

8

### d. Alyssa Ruddell, Ph.D.

Dr. Ruddell evaluated plaintiff in August 2020, and opined plaintiff had marked limitations in the following basic work activities: understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; complete a normal workday and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. AR 452. She also found mild and moderate limitations in other basic work activities. *Id.* The ALJ found Dr. Ruddell's opinion unpersuasive on supportability and consistency grounds. AR 31.

### i. Supportability

The ALJ found Dr. Ruddell's opinion was unsupported because she completed a checkbox form with little to no explanation for her limitations. AR 31. She also found these limitations were unsupported by Dr. Ruddell's own findings and noted Dr. Ruddell did not review any medical records. *Id.* Plaintiff contends that Dr. Ruddell's mental status examination contained several abnormal findings supporting her limitations and that the clinical interview sufficiently explains the limitations. Dkt. 8 at 9-10.

An ALJ may properly discount a medical opinion presented as a checkbox form that does not explain the bases for the doctor's conclusions. *Ford,* 950 F.3d at 1155. But simply because an opinion is rendered, in part, on a checkbox form is not reason alone to reject the opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("there is no authority that a "check-the-box" form is any less reliable than any other type of form."). While portions of Dr. Ruddell's opinion utilized a checkbox format, she also had conducted a clinical interview and mental status examination. AR 450-54. That

Dr. Ruddell did not write the specific bases next to each limitation is not a rational reason to reject her opinion.

Dr. Ruddell noted several abnormalities in the report of plaintiff's mental status examination. AR 453. Plaintiff was tearful and paranoid and endorsed experiencing both auditory and visual hallucinations. *Id.* Plaintiff's orientation, memory, concentration, insight, and judgment, were also impaired as evidenced by an inability to complete serial 3's or digit spans, and impaired problem-solving abilities. *Id.* Contrary to the ALJ's assertion, these abnormalities provide support for the opined limitations. Further, though the ALJ claimed Dr. Ruddell did not review any records, her opinion indicates she reviewed previous DSHS observations and obtained a medical history from plaintiff. AR 450. In sum, the ALJ's supportability findings are not supported by substantial evidence.

### ii.  Consistency

The ALJ found Dr. Ruddell's opinion inconsistent with plaintiff's presentation at appointments and her reported activities of daily living. AR 31. Plaintiff argues the ALJ failed to explain how the cited evidence undermined Dr. Ruddell's opinion. Dkt. 8 at 10.

As with her analysis of Ms. Minor's opinion, the ALJ failed to explain how the cited evidence was inconsistent with Dr. Ruddell's opinion. *Embrey,* 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Similarly, the ALJ failed to explain how plaintiff's activities were inconsistent with the opinion, or even which activities specifically were supposedly inconsistent. Accordingly, the ALJ's consistency findings are not supported by substantial evidence. *Brown-Hunter,* 806 F.3d

at 492 ("the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review.").

Having failed to articulate valid supportability or consistency findings, the ALJ erroneously rejected Dr. Ruddell's opinion. As Dr. Ruddell opined limitations more restrictive than those included in the RFC, the ALJ's error cannot be characterized as "inconsequential to the ultimate nondisability determination," and was thus harmful. *Molina,* 674 F.3d at 1115.

### e.  Andrew Forsyth, Ph.D. & Stephen Drake, Ph.D.

State agency psychological consultant Dr. Forsyth reviewed plaintiff's claim at the initial level and opined moderate limitations in sustained concentration and persistence, social interaction, and adaptation. AR 82-84. Dr. Drake affirmed these findings on reconsideration. AR 109-13.

The ALJ found these opinions mostly persuasive, noting they were consistent with plaintiff's longitudinal mental health history, improvement with treatment, and her documented daily activities. AR 29-30.

Plaintiff argues that the ALJ failed to explain how the opinions were consistent with the cited evidence. Dkt. 8 at 11. Plaintiff's argument is meritless. The ALJ follows her consistency finding with two paragraphs of analysis, explaining how specific findings from the record were consistent with the opined limitations. *See* AR 29-30. Plaintiff also asserts that the ALJ is uninformed about PTSD and faults the ALJ for describing symptoms of PTSD as "situational components" to plaintiff's mental condition. This argument fails to identify any error in the ALJ's findings on supportability or consistency.

11

Yet, despite articulating a thorough consistency analysis, the ALJ erred by failing to address the supportability factor. 20 C.F.R. § 416.920c(b)(2). That said, such error is harmless, as the ALJ did not reject any of the limitations opined by Drs. Forsyth and Drake.

In sum, the ALJ harmfully erred in rejecting the opinions of Ms. Minor, Mr. Weatherton, and Dr. Ruddell and must reevaluate these opinions on remand. Although errors in failing to explain how she considered supportability regarding the opinions of Dr. Koukol, Dr. Dees, Dr. Forsyth, and Dr. Drake were not harmful, the ALJ on remand must consider supportability and consistency for every medical opinion and prior administrative medical finding, as required by the regulations. 20 C.F.R. § 416.920c(b)(2).

**2. Plaintiff's statements regarding subjective symptoms**

In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of her symptoms for clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations omitted).

Plaintiff challenges the ALJ's analysis of her testimony generally, arguing that the ALJ failed to identify the specific testimony that was unreliable and what evidence undermined that testimony. Dkt. 8 at 13. When the ALJ discounts a claimant's testimony, the ALJ "must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103 (9th Cir. 2014) (internal quotation marks omitted).

Here, the ALJ summarized plaintiff's testimony and concluded that her testimony was not entirely consistent with the medical evidence and other evidence in the record. AR 24. The ALJ then went on to summarize the medical evidence (addressing physical and mental complaints in separate sections). AR 24-28.

Although the ALJ's references to plaintiff's testimony are somewhat generic, *see* AR 25, 26 ("allegations of extremely limiting mental health symptoms," "description of chronic severe pain"), she regularly references the testimony and points to specific evidence in the record to support her conclusions. *See* AR 24-28. Thus, the ALJ has adequately connected the medical evidence with plaintiff's testimony.

### a. Improvement with Treatment

The ALJ found plaintiff's mental symptoms were not as severe as alleged, citing an occasion in which plaintiff stated that her medications were "going pretty good" and she was having fewer nightmares. AR 27. Plaintiff argues that this statement fails to undermine her testimony regarding her mental health. Dkt. 8 at 14.

While improvement with treatment can be a valid reason to reject a claimant's testimony, the examples cited by the ALJ must "constitute examples of a broader development" to satisfy the clear and convincing standard. *Garrison,* 759 F.3d at 1018. Here, plaintiff's single remark that her medications were "going pretty good" is not enough to demonstrate sustained improvement in her mental health conditions. *Id.* at 1017 ("it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

### b. Lack of Treatment

The ALJ also found a lack of treatment prior to plaintiff's amended onset date suggested that her symptoms were not as limiting as she alleged. AR 27. The ALJ also noted that plaintiff's treatment after the alleged onset date was sporadic, and plaintiff cancelled or failed to show up for appointments. *Id.* An unexplained failure to seek treatment is a clear and convincing reason to reject a claimant's testimony. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005). But before finding testimony inconsistent on this basis, the ALJ must consider the possible reasons the claimant has not complied with or sought treatment. SSR 16-3p, available at 2017 WL 5180304, at *9 (Oct. 25, 2017).

The ALJ failed to consider ample evidence in the record explaining plaintiff's inconsistent treatment history. Plaintiff has regularly endorsed avoidant behavior and difficulty leaving her home due to past trauma, which has contributed to her lack of treatment. AR 496, 804. Plaintiff also experienced difficulty finding care, as she refused to return to one office after a negative experience and was uncomfortable seeking care at another office, which only had male counselors. AR 550.

The ALJ notes that plaintiff agreed to be discharged from counseling in January 2021 after only a few sessions with a counselor but fails to acknowledge plaintiff only sought discharge because her counselor was leaving the practice and she planned to seek care elsewhere. AR 27, 488. Further, even if plaintiff's decisions about when to leave or return to treatment or to any particular providers, could be characterized as unwise, the Ninth Circuit has found "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen*

14

*v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). As plaintiff has provided a good reason for her inconsistent treatment, this was not a clear and convincing reason to reject her testimony.

### c. Activities of Daily Living

The ALJ found plaintiff's activities such as preparing simple meals, completing household chores, grocery shopping, spending time with roommates and friends, completing arts and crafts, reading, and watching TV, demonstrated that her impairments were not as limiting as alleged. AR 27. Plaintiff argues the ALJ has failed to show these activities are performed at a level equivalent to work activity. Dkt. 8 at 15.

Engaging in daily activities that are incompatible with the severity of symptoms alleged can undermine a claimant's subjective symptom testimony. *Ghanim,* 763 F.3d at 1165. To discount a claimant's testimony based on activities, the ALJ must show the activities contradict her other testimony or meet the threshold for transferable work skills. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). To show the activities meet the threshold for transferable work skills, the ALJ must make specific findings that the claimant is able to spend a substantial part of her day engaged in pursuits involving performance of physical functions that are transferable to a work setting. *Id.* The ALJ has made no such findings here, and plaintiff's activities do not contradict her other testimony. This was not a clear and convincing reason to discount plaintiff's testimony.

### d. Poor Work History

The ALJ noted plaintiff had no earnings after 2009, and only minimal earnings prior to that date, suggesting that her lack of employment undermined her testimony. AR 28. The ALJ also cited a previous statement from plaintiff that she stopped working

because she moved away, rather than because of her impairments. *Id.* (citing AR 561). Plaintiff argues the ALJ failed to consider other factors that could have contributed to her work history, such as her abusive marriage and PTSD. Dkt. 8 at 15.

The Ninth Circuit has found that a poor work history can support a rejection of a claimant's symptom statements. *Thomas,* 278 F.3d at 959 (finding plaintiff's "extremely poor work history" and the fact she "has shown little propensity to work in her lifetime" weighed against her subjective complaints). Stopping work for reasons unrelated to disability may also undermine a claimant's testimony. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff cites no authority requiring the ALJ to consider factors that could have contributed to a poor work history. The ALJ therefore did not err by considering plaintiff's poor work history.

**Medication Side Effects**

The ALJ also found the evidence did not corroborate plaintiff's allegations of drowsiness as a medication side effect. AR 28. Plaintiff notes that she never alleged that medication side effects prevented her from working. Dkt. 8 at 16. There is no error.

**Step Three**

At step three, the ALJ found plaintiff's impairments did not satisfy the requirements of any listing.[2] AR 20-22. Plaintiff contends the ALJ did not properly analyze her general anxiety disorder or PTSD under Listings 12.06 and 12.15 because the ALJ did not analyze the Paragraph A criteria and did not conduct a meaningful analysis of the Paragraph C criteria. Dkt. 8 at 16. To meet Listings 12.06 and 12.15, a

---

[2] The ALJ considered plaintiff's spinal condition under Listings 1.15 and 1.16, her general anxiety disorder under Listing 12.06, and her PTSD under Listing 12.15. AR 20.

claimant must satisfy the requirements of both Paragraphs A and B or the requirements of both Paragraphs A and C for each listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2). Plaintiff does not challenge the ALJ's finding that she did not meet the requirements of Paragraph B.

Paragraph A of each listing outlines the medical criteria that must be present in the medical evidence. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(a). Paragraph C is the same for Listing 12.06 and 12.15, and requires the mental disorder be "serious and persistent," i.e., medically documented over a period of two years with evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that is ongoing and diminishes the symptoms and signs of the mental disorder; and (2) despite diminished symptoms, the claimant has achieved only "marginal adjustment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G(2)(b), (c).

At step three of the sequential analysis, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* Yet the ALJ need not discuss the findings in any specific section of her opinion. *Id.* at 513. If the ALJ offers more than conclusory findings, and engages with the record evidence throughout the decision, the ALJ does not reversibly err at step three. *See, Lewis v. Apfel,* at 514; *Havens v. Kijakazi,* No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022).

The ALJ's analysis of the Paragraph C criteria amounts to a conclusory statement that the evidence failed to establish the presence of the criteria. AR 22.

Although the ALJ engages in a lengthy discussion of the medical evidence at the next step when discussing the RFC, it is unclear whether there is evidence of ongoing psychosocial supports or a highly structured setting, or whether plaintiff has achieved only marginal adjustment. *See* AR 23-28. As the ALJ's decision does not support her conclusion at step three regarding the Paragraph C criteria, the ALJ has erred. *Valladares v. Kijakazi* 2022 WL 1262012, 2022 WL 1262012, at *1 (9th Cir. Apr. 28, 2022). That said, such errors are harmless where a claimant presents no evidence that she met a required element of the listing. *McMahon v. Berryhill*, 713 F. App'x 693, 694 (9th Cir. 2018).

Plaintiff argues that she satisfies the Paragraph C criteria because she has suffered from anxiety and PTSD for much longer than two years. Dkt. 8 at 16. Plaintiff's argument fails to address whether there is evidence of ongoing treatment, psychosocial supports, and structured settings or whether she has achieved only marginal adjustment. As plaintiff has failed to present evidence that she met the required elements of Paragraph C, the ALJ's error was harmless. *McMahon,* 713 F. App'x at 694.

Any error in the ALJ's failure to separately analyze the Paragraph A criteria is also harmless, as the ALJ found plaintiff did not meet the criteria for Paragraphs B or C, thus obviating a need for analysis of Paragraph A. *Carolina S. v Comm'r of Soc. Sec.,* 2026 WL 274560, at *6 (N.D. Cal. Feb. 3, 2026); *Molina*, 674 F.3d at 1115.

### 3. Step Five

Plaintiff argues that the ALJ's findings at step five are not supported by substantial evidence and are contrary to law. Dkt. 8 at 17-18.

First, plaintiff argues the ALJ erred in relying on the document preparer job at step five in light of Emergency Message (EM) 24027 REV, which precluded the use of certain occupations to support a non-disability determination without additional evidence on the job's applicability and availability. Dkt. 8 at 17. Plaintiff's argument fails, however, as EM-24027 REV was published on January 6, 2025, and thus does not apply to the ALJ's decision published in March 2024. Further, as noted by the Commissioner, any error here would be harmless, as the ALJ identified three other jobs plaintiff could perform which existed in significant numbers in the national economy. AR 32 (identifying three other occupations with 26,161 jobs in the national economy)[3]; *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 jobs in the national economy was a significant number).

Next, plaintiff contends the ALJ erred at step five by failing to resolve a conflict between the vocational expert's (VE) testimony and the DOT. Dkt. 8 at 17-18. Specifically, plaintiff claims the VE's testimony that she could perform the identified jobs with a sit/stand option conflicted with the DOT because the DOT does not address sit/stand options. *Id.* If the VE's opinion conflicts with, or seems to conflict with, the requirements listed in the DOT, the ALJ must ask the VE to reconcile the conflict before relying on the testimony to decide whether the claimant is disabled. *Gutierrez v. Colvin,* 844 F.3d 804, 807 (9th Cir. 2016). However, where the DOT is "silent on whether the jobs in question allow for a sit/stand option," there is no conflict with a VE's testimony

---

[3] The Court notes that, although the ALJ asserts that there are 60,138 small parts assembler jobs in the national economy, the VE actually testified that there were 15,138 of these jobs. *Contrast* AR 32 *and* 63.

that a claimant can perform a job with a sit/stand option. *Dewey v. Colvin,* 650 F. App'x 512, 514 (9th Cir. 2016).

Here, the RFC included a limitation that plaintiff needs to alternate sitting and standing. AR 23. The ALJ consulted a vocational expert, who testified that an individual with Plaintiff's RFC could perform the jobs of small parts assembler; inspector, hand packager; sorter agricultural; and document preparer. AR 63. The DOT is silent as to whether the jobs identified by the VE allow for a sit/stand option. AR 64. Therefore, as there was no conflict for the ALJ to resolve, the ALJ did not err.

Plaintiff also argues the RFC is defective because the ALJ found she was moderately limited in concentration, persistence, and pace (CPP), but failed to include any persistence and pace limitations in the RFC. Dkt. 8 at 18. The Ninth Circuit has recognized that an RFC adequately captures restrictions related to CPP where it is consistent with restrictions identified in the medical testimony. *See Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008) (finding a limitation to "simple, routine, and repetitive tasks" adequately accounts for moderate limitations in CPP).

Here, the ALJ found plaintiff had the residual functional capacity to remember, understand, and carry out simple tasks or instructions, and could perform tasks that require only simple work-related decisions with few, if any, workplace changes. AR 23. This is consistent with the opinions of Dr. Drake and Dr. Forsyth that, despite moderate limitations in CPP, plaintiff could complete routine tasks over a normal eight-hour workday with customary breaks and was capable of tolerating routine, infrequent, and predictable workplace changes. AR 82-84, 102-13; *see also* AR 30 (adopting state agency opinions to limit plaintiff to simple, routine tasks with customary breaks).

20

Accordingly, the RFC adequately captured the moderate limitations in concentration, persistence, and pace.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly found plaintiff's testimony was undermined by her lengthy history of not seeking or acquiring any job whatsoever for many years. Yet, even if plaintiff's credibility was undermined in this respect, if the medical evidence supports a finding that she has limitations that meet the criteria for disability, she may be eligible for benefits.

As for the medical evidence, the ALJ harmfully erred. The Court reverses and remands for further proceedings. On remand, the ALJ must re-evaluate the medical opinion evidence provided by Angela Minor, PA-C; Noah Weatherton, PMHNP; and Alyssa Ruddell, Ph.D.

The Commissioner is not necessarily required to conduct a new hearing; but if the Commissioner re-evaluates the medical evidence, and if the ALJ determines the re-evaluation of such evidence would make a difference in the five-step analysis and potentially change the RFC, the ALJ shall hold a de novo hearing and take additional evidence.

Dated this 23rd day of April, 2026

*Theresa L. Fricke*
U.S. Magistrate Judge